'TYLER, L
Ought not the instruction to have been refused, as it asks the court to declare' the contract void, while the statute simply says it shall not be recovered on?
Patton. If there be any error in the form of the instruction, the court should-not refuse it unconditionally and without explanation ; for that would be error. It should disaffirm the unsound part of it, and give the rest. The instruction which the court gave, affirms the lawfulness of the contract, and so was erroneous.
CLOPTON, J.*
The question for decision is — Is there error in the refusal to give the instructions asked, or either of them, or in the instruction which was given?
The law which governs this case is the act “concerning counsel and attorneys at law.” 1 Rev. Code 1819, page 267.
The 14th section of this act declares, that “the lawyers of this Commonwealth shall not demand, nor, directly or indirectly, or ,by any device, way or means whatsoever, take or receive, before the suit or suits they are or shall be employed in shall be finally determined, any greater or other fees or rewards, for the following services, than what are herein particularly mentioned and expressed: that is to say;” among other things, for any suit in chancery, sixteen dollars and sixty-six cents: the last clause of the section subjects every lawyer, exacting, taking, receiving or demanding any greater, fee, or other reward, for any of the services, before he has performed the said services, or finished the suit, to the penalty of one hundred and fifty dollars for every *offence; and the 15th section enacts, that “no lawyer, in any suit to be brought for his fees or services, shall recover more than the fees above mentioned, notwithstanding any agreement,, contract or obligation made or entered into by the party against whom such suit shall be brought, if such agreement, contract or obligation shall have been entered into before the suit or suits' in which such fees shall have accrued, or services been rendered, were finally determined.”
The second instruction moved by the defendant seems framed with a view to present the question that the contract mentioned in it amounted to champerty and maintenance, and was for that reason void. Iri the view which I have taken of the case, it is unnecessary to decide- that question.
In order to a decision of the question whether there is error, in refusing to give the first instruction, or in the instruction *471 given, it becomes necessary to ascertain the proper construction and operation of the clauses which have been recited. The prohibition in the 14th section is clear, that the attorney shall not demand, before the suit is finally determined, any greater fee or reward than that provided for in the law. That is to say, he shall not claim, ask or require, as a price for his services to be rendered in the suit, any greater fee, and consequently shall not contract for any greater fee or reward ; for, in making the contract, he must have claimed or required, that is, demanded, what was contracted for; and this seems to be cleared of all doubt by the ISth section, which declares that no lawyer in a suit for his fees or services shall recover more than the fees mentioned, notwithstanding any contract made with the defendant. That is to say, although the defendant may have contracted to pay more, more shall not be recovered, if such contract was made before suit was determined. This section leaves the parties free to make a contract after the suit is determined, and such contract might be enforced; but I do not think that in any case an attorney could, at any time, have recovered *more than the legal fee, where there was no contract, upon a quantum meruit, if the law means anything; for if in a case where the defendant has fixed the, quantum by contract, the attorney cannot recover beyond the legal fee, 1 cannot perceive the principle upon which that question is to be submitted to a jury; and the prohibition is, not that the attorney shall not recover upon a contract made before suit determined more than the fee allowed by law, but that in a suit for his fees or services he shall not recover more than the fees allowed by law, notwithstanding, or although, the defendant may by contract have agreed to pay more. That is, as I construe the law, he shall not recover more than the fees allowed by law, by proof of having rendered the services, and shall not entitle himself so to recover, by giving in evidence a contract to pay more.
Booking at the bill of exceptions, unconnected with any other part of the record, the first instruction moved by the defendant appears rather abstract. It was not, however, so regarded by the Circuit Court; for it was not refused on that ground. But considering the instruction, as every instruction asked for should be considered, in connexion with the declaration and the bill of particulars filed with it, and to be regarded as a part of it and with the proof adduced as set out in the bill of exceptions, the instruction ceases to be abstract. The declaration contains three common counts, and the bill of particulars contain charges of ten per cent, on various sums of money, and of the fee and tax in the suit, amounting together to $881 32; and the proof offered was of a contract for ten per cent, on whatever might be recovered. The instruction was, then, directly applicable, and should not have been refused upon the ground of being abstract: but ought it to have been given. The claim asserted, is for a fee and writ tax in a chancery suit and ten per cent, on certain sums of money ; and the proof offered to sustain it, establishes a contract that the plaintiffs were to have ten per cent, on whatever might be recovered. This ten per cent. *must be considered as additional compensation for conducting the suit. It wou.ld seem that the plaintiffs did not receive the sums on which the ten per cent, is calculated, as it would in that case have been retained by them; but this mode of calculation was resorted to, in pursuance of the contract, to ascertain the amount of compensation to which they were entitled under the contract; and although a contract which the law forbids to be made, denounces a penalty against one of the parties making it, and declares that he shall not recover upon it more than the fees allowed by law, may not be absolutely void, yet I cannot perceive how a claim founded upon it can be sustained. I am, therefore, of opinion, that the jury ought to have been instructed, that as to the claim of the plaintiffs founded upon the contract proved in this case, they should find for the defendant.
In the argument it was contended, that it was proved that the plaintiffs did attend before the commissioner, and to take depositions ; that these were services not enumerated in the law; that no specific fees were provided for them, and, therefore, the parties were at liberty to make a contract in reference to them, and that such contract would be obligatory. Had a specific contract for such services been made and proved, it might have been sustained; but no such contract was proved. The contract set out in the bill of exceptions was, that the plaintiffs should have ten per cent, on whatever was recovered in a certain chancery suit, for their services in the prosecution of it, and if nothing were recovered in it, then, no compensation for their said services, in attending before the commissioner to take accounts, or in court, or in taking depositions; and the plaintiffs have made no claim for any services in attending before the commissioner to take accounts, or in taking depositions; they claim only for fee and tax and ten per cent, on certain sums which, as may fairly be presumed, were the sums received in the suit. But the court not only refused to give the instructions asked for, but, “on the contrary, instructed the jury, that such a contract as is ^mentioned in either of the said instructions would be lawful, if in their opinion the compensation was not unreasonable in amount.”
Whenever instructions are moved, which the court thinks ought not to be given in the terms proposed, I have never doubted the propriety of the court’s proceeding to give such instructions as it considers right. There is, therefore, no objection to the course pursued in this case, bj’ the court, when refusing the instructions asked for by *472 the defendant, proceeding: to give such instructions as were deemed right. But, notwithstanding the great respect I entertain for the Judge whose opinion I am reviewing, I am unable to concur with him in the instruction rrhich he gave. This is a suit by “lawyers,” (to adopt the language of the law,) brought for their fees or services in which they claim to recover more than the fees above mentioned, by force of a contract entered into before the suit, in which the fees accrued and the services were rendered, was finallj' determined, and is plainly within the influence of the ISth section, which enacts that more than the fees “above mentioned” shall not be recovered, notwithstanding such contract. The contract, then, cannot be lawful. Besides, the instruction places the lawfulness of the contract upon the compensation being reasonable in amount in the opinion of the jury. This appears to be founded in the principle that the plaintiffs had a right to recover upon the quantum meruit, to be estimated by the jury, who, for that purpose, might resort to the contract as one of the elements of their calculation, and if they believed the contract fixed a reasonable compensation, the plaintiffs could lawfully recover upon it. But, in this view, the jury, by ascertaining the reasonableness of the compensation, would be doing nothing more than giving, by their verdict, to the plaintiffs, for their fees and services, more than was allowed by law; because, in the opinion of the jury, they reasonably deserved to have “greater or other fees or rewards;” which is, I think, plainly against the provisions of the *law. Por, the only principle upon which it can be submitted to a jury to find for the plaintiff upon the reasonableness of his claim, is this: that as the claim is reasonable, the defendant ought to have made a promise to pay, and therefore the law implies that he did make such a promise; and I do not think that, in relation to a subject matter, about which the law not only forbids a contract to be made, but declares that no recovery shall be had upon it if made, it can be said that the law will imply a contract.
I am, therefore, of opinion that the judgment should be reversed.
GILMRR, J.
In 1834, when the contract in this case was made, the statute of 1819, limiting the fees of counsel and attorneys, was in force, and had been, at least, since 1792. See 1 Hening’s Statutes at Large, new series, IS.
By that statute it is provided, that “the lawyers of this Commonwealth shall not demand, nor, directly or indirectly, or by any device, way or means whatsoever, take or receive, before the suit or suits they are or shall be employed in shall be finally determined, any greater or other fees for the following services, than what are herein particularly mentioned and expressed; that is to say: lawyers practicing in the General Court may demand and receive for an opinion or advice,where no suit is brought, or prosecuted, or defended by the attorney,' S3 58; in any suit in chancery, $16 66.” That is, as I interpret the statute, lawyers shall not for their services in any suit in chancery, before the same shall be finally determined, demand any greater or other fee or reward than $16 66. The words “than what” manifestly refer to fees .and rewards, and not to services. The intention of the Legislature clearly was, to limit-fees in chancery cases, under the circumstances mentioned in the act, to the sum specified. If this were not so, no particular services in a chancery suit being specified, there would be no limit to the fee. Certain services "'are specified, as, for example, giving advice and tending a survey; and certain suits are specified, and the fees fixed and limited for those services in those suits; and then the statute prescribes a penalty against those who take, demand, exact or receive more for said services, before they have performed said services, or finished said suits — keeping distinct fees for services, and fees in suits.
The next section of the same statute provides, that no lawyer shall, in a suit to be brought for his fees or services, recover more than the fees above mentioned, notwithstanding any agreement, contract, or obligation made, if such contract were made before the suit, in which such fees shall have accrued, or’ services been rendered, was finally determined. It can hardly be necessary to cite authority to prove, that if a statute declare an act penal, no suit founded on a contract in violation of that statute can be maintained; and here, not only does the statute fix a penalty on an attorney making such a contract as this, but the last section cited, in addition, provides, that in a suit brought for fees or services on a contract made before the services rendered or suits determined (as in this case), none but the legal fees shall be recovered. Not only does this contract violate the penal provision of the statute, but the judgment is against its positive prohibition.
But, it is insisted by the appellees’ counsel, that even admitting the contract to be illegal and void as to the ten per cent., the plaintiffs, in the Circuit Court, had a right to recover the fee allowed by law. The contract was, that the attorneys should have ten per cent, on the amount recovered, for their services. All of these services seem to have been anticipated by the parties, and I can see no ground on which they can claim a fee in addition; for it is not pretended that they rendered any other services than those contemplated by the contract, and they bound themselves to render them for the ten per cent, on the amount recovered, and I think they have no right to demand any other fee; expressum facit *cessare taciturn. There was, certainly, no express contract to pay the fee and tax, and the express contract negatives an implied one, on the principle above stated. .
*473 But admit that the plaintiffs were entitled to recover, in the action brought, the fee and fax allowed by law; neither the instruction asked, nor the instruction given, relates to the fee and tax, but exclusively to the contract proved. The court instructed the jury directly upon that point, “that such a contract as is mentioned in either of the instructions would be lawful, if, in their opinion, the compensation was not unreasonble in amount;” thus leaving the jury to decide that which the statute has fixed, and to render their verdict against its provisions; not limiting them to the fee fixed by law, but authorizing them to find for the plaintiff the whole amount contracted for, and the fee allowed by law besides, as they actually did. I have been strongly inclined to sustain the judgment, and have struggled hard to do so; because it merely carries out the agreement of the parties, no doubt fairly made; but I am reluctantly driven to a different conclusion. I think the contract not only against the long settled policy of the law, (whether wise or unwise, it is not for me to decide,) but clearly against its letter and spirit. The contract was made before the services were performed, or the suit ended; the fee secured was greater than the law then allowed, and the plaintiffs have been enabled, under the instruction and by the judgment of the court, to recover the whole amount secured by the contract, superadded to the legal fee. If this be allowed, then the laws limiting fees have been as unmeaning and idle as we all know they have been practically inoperative. And still more idle has been the legislation of 1840, and of 1850, allowing attorneys to contract, like other people, with their clients, and to recover on those contracts.
Thinking the instruction erroneous, on the grounds and for the reasons stated, I deem it unnecessary to express any opinion on the other question argued by the counsel, more especially since by the recent changes in *the statute, it has become a question of but little practical importance.
I am for reversing the judgment.
TYLER, J.
By the counsel for the appellant, who opened the argument in this cause, it is insisted that the contract stated in the bill of exceptions is void, as savoring of maintenance and champerty ; as immoral in its tendency, and therefore in contravention of public policy. As to its savoring of maintenance and champerty, it will be only necessary to define maintenance ana champerty, and refer to the contract set out in the bill of exceptions, in order to shew that there is not a feature in this contract that bears the slightest resemblance to champerty or maintenance. In Eindon v. Parker, 11 Mees and Welsby, 675, Lord Abinger said: “The law of maintenance, as I understand it, upon the modern construction, is confined to cases where a man improperly, and for the purpose of stirring up litigation and strife, encourages others either to bring actions or to make defences, ’ ’ which they have no right to make; and champerty is defined to be an agreement to share the fruits of maintenance; 7 Bing. 369, per Tindall, C. J., 15 Vesey, jr. 139; and contracts arising out of the bringing or conducting such actions are illegal and void. There is nothing then on this record to show that this contract has a single ingredient in it, that would go to make up maintenance or champerty. Then, as to its immoral tendency. This contract was entered into in 1834, and1 whatever doubt might have existed then, as to its vicious or immoral tendency, has been dissipated by the fact, that six years after this contract was made, contracts of like import received the shield and sanction of the law by the act of 1840, and again in 1850; and it is in vain, therefore, to argue that a contract which is rendered valid and obligatory on parties to it in 1840, by legislative enactment, contained within itself in 1834, an element so vicious and immoral, as to work its own dissolution. The laws of morality are not *so mutable, as such a course of argument would lead us to infer; and in view of these facts, to declare this contract void as violating the principles of a sound morality, would be in effect to pass a judicial censure on the law-making power, in which I should be most reluctant to concur. But it is contended, that although the contract on which the instruction of the court below was invoked, might not be void at common law; and although it may not be declared void by statute, yet that it is illegal by reason of its contravening the act of 1819, and therefore there was error in the court in instructing the jury that the contract was lawful, &c.
In examination of the act of 1819, I have been unable to discover any thing from which to deduce the inference, that agreements made by counsel and clients, before suit determined, for higher fees than those provided for by the act, are illegal. On the contrary, it seems to me that the act contemplates that such agreements may be made, and recognizes the right to sue on them; and that the only restriction in the statute is, as to the remedy to enforce them in toto, to wit: That in suits brought on agreements coming within the *pr°vi” sions of the act, the lawj'er shall not recover for services enumerated in the act, higher fees than those prescribed by the act. But in reference to contracts for services not enumerated in the act, and for which services the law has fixed no fees ‘‘expressio unius est exclusio alterius;’ ’ and as to such services, counsel and client are left free to contract at any time and on any terms, subject only to the law regulating contracts between persons standing in the relation of attorney and client; and that where there is a mixed contract, for services where the compensation is fixed by law, and for services- where no compensation is fixed by law, unless the contrary appear on the face of the contract, the pre *474 sumption of law is, that the parties stipulated for compensation ’ for the services according to the law regulating the price of those services, and that the residue is of services for which no price is fixed— upon the principle that *the law never imputes illegality to contracts, but the presumption is ih favor of their legality until the contrary is shewn. The act of 1819, Rev. Code, chap. 76, p. 270, § 14 and 15, is substantially as follows: The lawyers of this Commonwealth shall not demand, nor directly or indirectly, by any device, ways, or means, whatsoever, take or receive, before suit or suits they are or shall be employed in shall be finally determined, any greater fees or rewards for the following services, than what are herein particularly mentioned and expressed. Then follows an enumeration of the services, and the fees fixed by law to which the act applies, to wit: Ror an opinion $3 58; for an action of ejectment $16 66; any suit in chancery $16 66; for every day a lawyer attends a survey $3 58; and then follows this provision: “And any lawyer exacting, taking, receiving, or demanding any greater fee or other reward (for what)? for any of the above services, before he has performed the same, or finished said suits, shall forfeit $150.” It will be perceived, that no fee is fixed in the act for taking depositions, or going before a commissioner in chancery, and I therefore assume it as a self-evident proposition, that if a lawyer living in the city of Richmond was spoken to, to go to Petersburg, to take depositions, and was to demand and receive for his services, in taking depositions, $25 or $50, before the depositions were taken, that he would not be obnoxious to the penalty in the act, and a fortiori, an agreement before the depositions were taken, to pay after they were taken, would be perfectly legitimate.
Then follows the 15th section, which enacts in substance — that no lawyer in any suit to be brought for his fees or services on any agreement which shall-have been entered into before the suit or suits in which such fees shall have accrued, or such services have been rendered, were finally determined, shall recover more than the fees above mentioned, notwithstanding such agreement, contract, &c: What part or portion of this act is it that prohibits these agreements to be made, either expressly *or by implication? On the contrary, does not the statute by necessary implication, contemplate the making of these contracts and the institution of suits on them? But for the benefit and protection of clients, the legislature has deemed it politic to declare that in suits, on such contracts, the attorney shall not recover for the services mentioned in the 14th section, more than the fees prescribed by that section. This restriction on the right of the attorney to recover on the contract more than the legal fees, is wholly unconnected with the consideration of the contract, as is manifest from the fact, that in the absence of any contract made before suit determined, there is no inhibition in the statute on the right of the- attorney, after suit ended, to recover for his services on a quantum meruit; and the statutory defence being wholly unconnected with the consideration, but only furnishing a de-fence which goes in denial of the remedy, must in all such cases be specially pleaded. In actions of assumpsit, the defendant may give in evidence, under the general issue, anything going to show illegality in the contract at common law, as opposed to public policy; or that the contract has been declared void by the statute; or declared to be illegal by statute; or the incapacity of the party to contract, as duress, coverture, &c. ; or that the plaintiff never had any cause of action, or a discharge by the act of the parties, as payment, release, or discharge by a new contract — -yet matters in discharge, which not controverting the consideration of the contract, and not objecting to it on account of any of the above recited defences, or defences founded on similar grounds, but which go to deny the remedy only, must always be specially pleaded- — -such as the statute of limitations, bankruptcjr, &c. And it is by virtue of this rule that the defendant in an action of as-sumpsit is held bound to plead the statute of limitations if he means to rely on it. Ror although the statute of limitations declares, substantially, that no action, after five years from the time the cause of action arose, shall be brought, yet if an action is ^brought, the defence is waived by not pleading the act. The statute of limitations, bankruptcy, and this statute we are considering, being enacted from considerations of policy for the protection of defendants, and for their benefit, if they mean' to claim the benefit of the statute, they must plead it; and as they may waive the benefit of it, they are considered as having done so, when they fail to plead it. None of these defences go to the consideration of the contract; to the incapacity of the parties to contract, or to matters of discharge by the act of the parties; but all go in denial of the remedy to recover on the contract, admitting the consideration to be legal, &c. It appears therefore manifest, that if the defendant meant to claim the benefit of the statute, he ought to have plead it.
It is, I think however, very clear that the defendant in the court below did not intend to rest his defence on the statute, but that he placed his defence on the ground that the contract was void as being opposed to public policy, and if he had been right, and the contract was obnoxious to such an objection, the contract stated in the bill of exceptions, and on which the instructions were, prayed, would have been all-sufficient for his purpose. That defence failing, the defendant has fallen back on the statute; but, unfortunately for him, his case is not in a condition to give him the benefit of it, if he would under any circumstances derive benefit from it. Ror if it is admitted *475 that under the general issue he might give in evidence the defence which pleading the statute might entitle him to, it so happens that the contract stated in the bill of exceptions, and on which the instructions were asked, is not such a contract as is mentioned in the statute, and therefore does not come within its influence. The contract set out in the bill of exceptions, is not on its face a contract for higher fees than the fees mentioned in the statute; nor are the instructions so shaped as to leave that question to be settled by the jury on the evidence. The contract stated in the bill of exceptions, and on which the instructions were prayed, is a contract ^between attorney and client, entered into before suit determined, in consideration of services to be performed in prosecuting a chancery suit, taking depositions, and attending before the commissioner, for ten per cent, on the recovery, or out of the recovery, (it matters not which.) What this ten per cent, amounted to, is not stated; nor do the instructions provide that if the jury believe from the evidence that the ten per cent, on the recovery amounted to more than the legal fee, that then the attorney could only recover the legal fee ; which would have been the only instruction the court could have given. Because we know if agreements are entered into, and the consideration is not tainted with illegality, but some of the promises even are illegal, that the plaintiff may still recover to the extent of that portion of the promise which is legal. (Chitty on Contracts, 573.) We all however agree that the court did not err in refusing the instructions. Was there then any error in declaring the contract stated in the bill of exceptions to be a lawful contract? I think not — as may be shown beyond cavil or controversy, in a few words. The contract as set out in the bill of exceptions, and which was declared lawful by the court, is not on its face an agreement under the statute, for the reasons stated; and not appearing as stated on its face to be illegal, the law presumes it to be legal, as illegality is never inferred. Nay, further; if the court may reasonably put two interpretations on a contract, the one legal and the other illegal, it is the duty of the court to put that interpretation on the contract which will support it.
Viewing this contract then in any light in which it can be presented, there is no error in the record. Eor, as before said, if it can be contended with any show of reason, that agreements mentioned in the statute are unlawful, and so declared by the act, the contract stated in the bill of exceptions is not such a contract. Or, if it be insisted that the contract in this case was in fact within the provisions of the statute, the defendant ^having failed to plead the statute, he is to be considered as having waived it. Or admitting, for the purpose of the argument, that this defence may be given in evidence under the general issue, the defendant has failed so to shape his instructions as to present that question for the decision of the jury, on the evidence to be adduced before them. And if this contract is, as I consider it, a mixed contract, for services mentioned in the statute, and for which a fee is fixed by statute, and for services not mentioned in the statute, and for which no fee is prescribed by law, then there is nothing in the record to show that limiting the appel-lees to the legal fee of $16 66, for preparing the pleadings and arguing the cause in court, that the recovery was more than a reasonable compensation for services not mentioned in the statute, and for which no fees are fixed by law. Eor these reasons, I am for affirming the judgment.
THOMPSON, J.
A great deal of antiquarian legal lore and classical research have been displayed in the argument, which could not fail to interest and amuse, however irrelevant or immaterial in its bearing, it may be deemed upon the right decision of the cause. As to so much of the defence as is predicated upon the assumption that the contract, said by the bill of exceptions to have been proved, is champertous, or savors of champerty, I do not see how we can for one moment entertain such an hypothesis, unless we are prepared to carry our reverence for obsolete black-letter so far as to hold that the assignment of an open account, or judgment, or any other chose in action, not assignable by statute, constitutes maintenance, or that wager of law, wager of battle, and the ordeal, are still existing modes of trial in Virginia; for I am not aware they were ever expressly repealed, nor am I, that they were ever practiced with us, either before or since the Revolution. Tf the common law of champerty, in its utmost rigor, were now in full force, or that of any English statute or our own, could be held at all applicable to a contract between counsel and *client, merely stipulating for a reasonable fee beyond that allowed by statute, (as we must presume this to be from the finding of the jury, under the instruction given them by the court,) whether contingent or certain, the contract is manifestly wanting in the main ingredients of the offence. The plaintiffs were not inter-meddlers or movers of the suit in any objectionable sense or the legal sense of the term, but were in the exercise of their lawful vocation; they were not to prosecute at their own expense, nor were they to have a part of the recovery in the legal sense of that term; and if the decision of this cause depended upon the distinction taken by the counsel of the appellees between “on” and “of” or “out of,” I am far from considering it so unfounded and far-fetched as the adverse counsel seemed to think. We see from the authorities cited at the bar that it has been taken and sustained by learned courts, both English and American, and is by no means unfounded or unsustained by the analogies of the law. Take the instance that some times occurs in partnership cases, when the question is, whether a person *476 acting in the character of clerk is by the contract he has made with his employers for compensation constituted a partner and liable as such, or only an employee and subordinate of the concern. By the law of partnership, every one who participates in the profits, is, as to the rest of the world, to be treated as a partner, however otherwise it may be inter se. The courts, in such cases, have made the liability to depend upon just such a distinction as has been taken in this case; that is, whether he was to be paid out of the profits, or, if you please, a certain proportion of the profits or a commission upon the profits. I can’t perceive that the distinction or the difference is any more material or substantial in that case than the one under consideration ; yet the courts have made very important consequences to flow from the distinction, by holding that one form of reservation, the first, constitutes the clerk a partner; the last, not: whilst all must admit that it would best accord with the *policy of the rule — the protection and security of strangers dealing with the firm — to make him a partner in the last as well as the first case, whereby his responsibility to creditors is secured, and his equal if not superior right to subject the profits to the payment of his debt is denied. In order to take the clerk out of the influence of the rule, that a participant in the profits is to be treated as a partner, they have held a compensation of such a per cent, or commission upon or on the profits is not the same thing as compensation or payment in a portion of the profits, or out of the profits; and that the term “upon the profits” refers to profits only as a stanard of compensation, whilst the other expressions give him a right to the portion of the profits (stipulated for as compensation) as profits. If such a distinction shall obtain and be tolerated in a case involving only civil responsibilities, how much more ought it to be favored by the courts in one wherein the defence not only involves civil rights and responsibilities, but (what is equivalent to penal sanctions), involves the character and moral conduct of honorable men, by the imputation of a species of the crimen falsi. A defence, too, based upon an obsolete law that has slept a dead letter upon the statute book from its enactment until the adoption of the Code of 1849, when, by its tacit repeal, it was consigned, to a common grave with the law limiting the fees of counsel, and forbidding their following up their cases from the inferior to the appellate court, and the laws against regrating, forestalling and monopolizing, and buried beyond the reach of the judicial resurrec-tionist.
It has not been contended that stipulating for more than the legal fee before the determination of the suit, constituted or savored of champerty, though more than the legal fee could not be recovered under such a contract. Nor do I suppose it could be so contended in such a case, even though the attorney, besides agreeing for such a fee, stipulated for a lien upon the recovery; for if so, it would involve the strange incongruity, if *not absurdity, of declaring to be champerty, the reservation by contract, of that for which both courts of law and equity raise an implied lien. Then, if the contract is champertous or savors of champerty, it can only be because it stipulates for a fee or compensation in its nature contingent or conditional; and whilst a large, even exorbitant, fee certain would be free from the taint of champerty, a small or moderate contingent or conditional one would be obnoxious to the charge. It is the feature of contingency that brings it within the influence and inhibition of the policy which condemns champertj' and maintenance, because, according to the argument, it gives an undue stimulus to the zeal and to the selfish passions of the counsel; has a direct and irresistible tendency to debase and demoralize, to render them insensible to the promptings, and deaf to the voice of professional honor and duty, and thereby to corrupt and obstruct the pure administration of justice. I confess, I can perceive no such vicious tendency or effect in a contingent or conditional fee. Some clients might suppose, and not without some show of reason and probability at least, that such form of compensation constituted a better guaranty for fidelity, energy and proper zeal, than the fee certain; and, besides, I can perceive the strictest propriety in some cases, if not in all, of regulating the reward by the success, i. e. the amount of the recovery. If the question were submitted to a court or jury or commissioner in chancery, upon a quantum meruit, in some cases if not in all, the measure of success, the quantum of recovery, would form an important element in the enquiry of and assessment of damages. In addition to this, it might not unfrequently occur that the ability of the client to pay depended upon the successful assertion of his rights. If successful, he could pay liberally; if otherwise, nothing. Why condemn a contract looking to such contingencies? It is certainly favorable to the client that such contracts should be sanctioned, as they not only proportion the compensation to the benefit conferred in the successful *assertion of his rights, but are in fact based on his ability to pay. Abrogate the right so to contract, and whilst you would thereby shield the wrong-doer from amenability to redress, you virtually close the doors of justice upon the party aggrieved in many cases; for with us, however it may be considered elsewhere, lawyers are not officers bound to undertake causes, whether they will or not. In the actions, ex dilicto, such as slander, assault and battery, &c., in which such fees are most usually stipulatedfor, it is most proper to take them. In all cases the client must be and may be safely left to the protection of the courts of law and equity, who will enterpose to relieve against extortion, oppression and unfair dealing, when a proper case for such inter *477 position arises. Public policy, morality, I and the interests of suitors require no other protection. The genius of this practical t and utilitarian age, and the exigencies of ! society, render any illustrations or analogies \ borrowed from the Roman law, defining the relations and prescribing the rights, duties and responsibilities between patron and client, (wherein the fee or compensation of the patron was considered in the light of an honorarium or mere gratuity,) or from the ancient common law which regarded it in the same or a similar light, as inap-posite and inappropriate, in reference to the affairs of mankind in this age, as would be the code of chivalry promulgated by the Knight of Ea Mancha, to the common every-day concerns of life. ■ ;
The doctrines of the civil and the common law invoked in the argument, were founded upon error more gross, but kindred in principle to that which under the decision of English courts and judges, denied the existence of the right of literary property at common law; and before the statute of Ann, held according to the rhodomontade of Eord Camden, that glory was the only appropriate reward of science, and that those who were desirous of the glories of authorship, scorned all meaner views. The English law gave no action to the physician, (whilst it did to the surgeon,) not so much because*it was regarded in the light of an honorarium or gratuity, but because it was his own fault that he did not demand and receive it in advance. It gave no action to counsel, (whilst it did to the attorney,) because the fee was regarded as an honorarium, but it never denied him the right to take, demand and receive whatever the client was willing to give. With us, (with the exception of the restriction placed upon counsel in reference to fees before suit ended by the old law, repealed by the act of 1839-40, and the Code of 1849,) no such absurd rules and absurd distinctions have ever prevailed, nor am I aware that they obtain in any State in the Union. Eawyers, doctors and divines, are all placed upon a common footing of equality, as “laborers worthy of their hire,” and free to contract for their compensation as all other persons, their contracts being subject to the supervision and control of the court in the event of extortion, oppression, or unfair dealing of any kind, and themselves subject to the yet more potential and conservative influence of public opinion, operating upon the ordinary instincts of our nature, to prevent oppression or the abuse of professional confidence or professional influence.
I hold, then, that champerty, or savor of champerty, is wholly out of the question, and the only debatable point is that argued and relied on mainly, if not exclusively, by the concluding counsel of the appellant —the defence founded on the statute concerning counsel and attorneys at law, 1 Rev. Code 1819, l 14, IS, p. 270, 271. I understood him as not insisting very confidently, if at all, that there was error in the \ ■judgment for the refusal of the judge to give the instructions prayed, but as relying ■ mainly, if not altogether, upon the error assigned for giving the instruction which ; was given by the court, and that not for cause of champerty, but upon the ground of the statute above cited.
In the consideration and solution of this question, a glance at the state of the pleadings may not be inappropriate. It is an action of general indebitatus assump-sit, ^containing three counts. The first, for work and labor, care, diligence, and attention by the plaintiffs before that time, done, performed and bestowed, as the attorneys and solicitors of and for Wm. Major, and at his instance, in and about the prosecution, defending and soliciting of divers causes, suits and business for the said Wm. Major, deceased, and for fees, dues, &c., of right payable to the said plaintiffs in respect thereof; and also, for the same sort of labor, care, and diligence, in all respects as the preceding in and about the prosecution of the chancery suit of Jamieson’s trustees v. Jamieson’s administrator. The second, a quantum meruit count for the same or similar services stated in the first, and the third, a general indeb-itatus count for money loaned and advanced, paid, laid out and expended, had and received, and upon an insimul compu-tassent. WEh this declaration an account, or bill of particulars, was filed, which, upon being filed with the declaration, or after-wards, by the leave of the court, became part and parcel of the declaration. Erom this account, or bill of particulars, it appears, the plaintiffs brought their suit to recover the legal fee and writ tax, and ten per cent, commission on the moneys recovered in the chancery suit of Jamieson’s trustees v. Jamieson’s administrator. The defendant first demurred generally to the declaration, and then pleaded the general issue. The demurrer was over-ruled, and the parties went to trial upon the general issue; and when before the jury, two instructions were prayed and refused, and another instruction given, which several instructions form the subject of the bill of exceptions, and raised the questions which have been discussed with so much learning and ingenuity by the counsel on both sides.
It is very manifest, from the form and structure of the instructions prayed in the court below, that the main, if not exclusive reliance of the counsel moving them, was the statute, or common law, or both, against champerty; as it was his principal reliance in his argument addressed to this court. The first is so framed as to give him the '^benefit of both defences, being leveled at a contract dated in 1834, before the repeal of the counsel fee act, in the Code of 1819, by the law of 1839-40; whilst the last is based wholly upon the law against champerty, because it asks the court to declare such a contract as is supposed in the first instruction null and void, whether made before or since 1840; that is, notwithstanding the repeal of the old law, *478 and, I presume, if the trial had taken place in 1851, or later, the same counsel would have added to his last instruction the words, “before or since the 1st July, 1850.”
I have already expressed the opinion, that the defence of champerty cannot avail the defendant. Now let us enquire if the court, in refusing- the two instructions moved, or in giving its own instruction violated the provisions of the statute concerning counsel and attorneys’ fees, in force at the date of the contract. The first objection to both of the instructions asked is- this. The bill of exceptions does not profess to-certify the whole evidence, but only so much as was supposed necessary to shew the relevancy of the question of law propounded, to wit: Proof of the contract in relation to which the instruction was prayed. What other evidence may have been given in support of a quantum meruit or insimul computassent we cannot know. The contract said, by the bill of exceptions, to have been proved, and the one upon which the defendant’s instructions were predicated, are very materially different from the one proved, embracing, as it did, elements such as attending before the commissioner and taking depositions — services for which no fee is prescribed, and to which, in my opinion, the statute is wholly inapplicable; while the one supposed by the instructions contains no such elements, but only specifies a service for which there was a prescribed fee, and to which the statute was applicable (it being made before suit ended), to prevent a recovery upon the footing, force and effect of the contract alone. The instructions asked, then, raised abtract questions of law, which the *court, for that reason, was not bound to give. It is, to say the least, questionable (and I understood the concluding counsel of the appellant as concurring in the doubt,) whether, if there was no objection to the instructions asked, upon the ground of being abstract, and the law u as applicable as well to the contract proved, as the one assumed by them, the court was not asked to go too far, when invoked to declare the contract void in toto, as well to the extent of the legal fee as to the excess —the law not declaring the contract void, but that nothing beyond the legal fee shall be recovered in virtue of it. Hence, the whole stress of his argument was directed against the legality of the instruction given by the court. And that must necessarily be considered as given upon the contract stated in the exceptions as proved, and not upon the contract supposed in the instructions and refused. Thus considered, was there any error in the instruction given? Tor the reasons stated in the opinion of Judge Tyler, in which, in the general, I concur, I think not.
This concurrence of opinion supersedes the necessity of stating my views on that point, as they» would be, in substance, but a repetition of his; and I but the more readily concur in that opinion, and the judgment of affirmance which is the result of it, because, as at present advised, my mind is pretty well made up — indeed, I may say, it is entirely so — to affirm there was no error, even though the contract had embraced no other services than the single one supposed in the instructions asked, for which a fee is prescribed by the statute. These are my reasons for this opinion. I have never doubted, and never before the argument of this cause heard a doubt expressed, that, according to the true construction of the act of 1819, although counsel were forbidden to demand, receive, take or contract for more than the statutory fee before the suit was ended, and if they did, incurred a penalty for demanding, taking or receiving, under 'i 14, and under § 15, were disabled from receiving more; yet, after the determination of the suit, they could ^lawfully demand, take, receive and contract for whatever the client chose to give, and that if. they made no contract before suit ended, after it was ended they might sue for, and receive the value of, their services beyond the legal fee upon a quantum meruit, pre--cisely in the same way, and to the same extent, as any other person; and if a contract had been made before and repudiated by the client, after suit ended, and the statute relied on by way of defence, the counsel was remitted to his quantum meruit in the same way as if no contract had been made, and might, peradventure, receive even more than had been agreed upon by the repudiated contract. This has been the interpretation of the law, and the practice under it in my circuit, ever since I have been upon the bench, without a dissentient voice on the part of a solitary member of the bar, so far as I am informed. Case after case has occurred where fee bills have been sued on at law, or claimed before commissioners in chancery, demanding more than the legal fees, after suit ended, and have been allowed, without objection, by courts, juries, and commissioners in chancery, upon precisely the sanie ground, and the same sort of evidence as physician’s bills, or any other services, upon proof of the service and the value thereof. It has been the every-day practice of the courts to allow extra fees in their judgments or decrees, as well under the old law as the new. The Court of Appeals have expressly adjudged, that it was lawful to credit an execution with extra fees paid counsel when the law of 1819 was in force. It was but the other day, in this court, our decree allowed counsel extra fees for services rendered under the old law without reference to the new, without any question of the legality of the allowance. Neither the terms of the law, nor its policy, so far as we can discern that policy from its terms, countenance anyr such construction as would forbid counsel to recover upon a quantum meruit after suit ended. From the fact that the law has been a dead letter from its enactment, and obsolete before its late repeal, we have no decision of our own court of last *resort, and must, therefore, con *479 strue it without the aid of any direct and express Virginia authority.
The 14th section of the act forbids the taking, demanding or receiving more than the prescribed fee before suit ended, under the penalty of SISO. The 15th section does not even forbid entering into a contract for higher fees, before the determination of the suit, but only limits the recovery on such contract to the legal fees; so that, if it can be regarded as an implied inhibition, the only sanction prescribed (if sanction it can be called) is the limitation of the recovery to the legal fee. It must be conceded, that before the statute, and in the absence of such a law, there was no restriction upon the right of counsel to take, demand, receive and contract for whatever the parties could agree upon. The inquiry, then, is, how far is this right restrained by the law? The answer is, only until the suit is ended —containing a negative pregnant with an affirmative of the right to do so after suit ended and determined — a consequence that would follow without such negative pregnant, inasmuch as the right existed before the enactment, and was onlj’ taken away or suspended until the suit was determined. To remove all doubt or question that might have arisen upon the general phraseology of the old law, forming part of \ 15, as to whether that section of the old law should apply to contracts made after, as well as before suit ended, the Legislature, out of abundant caution, (for it was unnecessary —the old law being, in fact, applicable only to contracts made before,) inserted a proviso, indicated by inverted commas, in the Revisal of 1819, expressly confining the inhibition to contracts made before suit ended.
What was the' policy of the law? It may have been two-fold: first, to provide a tax fee to apply as between the litigants, plaintiff and defendant, (as the courts of New York held, in the case of Stevens v. Adams & Cagger, reported in 23 and 26 Wendell, was the sole and exclusive purpose of the law of that State on the subject of officers’ fees, so far as counsel fees were concerned,) *and, second, the leading policy of our law, doubtless, had a more important aim, or what was deemed more important, which was, to guard the client against extortion, imposition or oppression before suit brought, or during its pendency, and before it was finally determined, when the Legislature presumed the client more in the power and at the mercy of an extortionate barrister than at any other time, and interposed this law as a shield or safeguard against such oppression and wrong; and to this extent, the policy had some show of reason, and might be excused, if not approved. But, when you go farther, and hold that it confines the attorney to the legal fee after suit ended, however inadequate the compensation, whether a contract has been made before or not, instead of a shield to protect the client against extortion and oppression, you convert it into a sword, an instrument of offence in his hands, with which to strike down the rights of counsel, and to inflict upon them the most cruel injustice. This is a construction not warranted by the words of the law, is in direct conflict with its policy, and never, for a moment, entered into the contemplation of the Legislature.
In two cases in Kentucky, Rust v. Larue, 4 Litt. 411, and Caldwell’s administrator v. Shepherd’s heirs, 6 T. B. Monroe, 392, it was held, that counsel performing services under a contract, even champertous, or savoring of champerty, and void in law, might nevertheless recover, upon a quantum meruit, a fair and reasonable compensation for their services. In Pennsylvania, a State whose legislation has never been marked by undue partiality for the rights and immunities of counsel, it has been decided, that a suit might be sustained by counsel, to recover upon a quantum meruit, compensation for services beyond the fee allowed by law — see Gray v. Breckenridge, 2 Pennsylvania Reports, 75, over-ruling the old case of Mooney v. Loyd, 5 S. & Rawle, 412, wherein the reverse of the proposition had been held. And in the case of Stevens & Cagger v. Adams, 23 Wend. 57, and the same case, upon appeal, *of Adams v. Stevens, &c., 26 Wend. 451, it was held, that, in New York, an action at law lies by a counsellor against his client, upon a "contract either express or implied, to recover compensation for services rendered upon a quantum meruit, notwithstanding the provisions of their law regulating the fees of counsel. We are not advised of the provisions of the Pennsylvania statute, upon which the case cited from 2 Pennsylvania Reports was founded, nor of the provisions of the Kentucky statutes ; but we see from the case cited from 23 and 26 Wend, what were the provisions of the New York act; and, to my mind, the construction which I place upon our statute does far less violence to its letter, besides being altogether in accordance with its policy, than the decision of the courts of New York upon their statute. It required a very forced and latitudinous construction, doubtless favoured, to get over or around the provisions of a most absurd and unjust law, if held applicable to^ counsel in all respects, to hold, as they did in the case referred to, (both the inferior and the appellate court,) that their statute, although sufficientlj' comprehensive, and in express terms embracing counsel, only intended to prescribe a tax fee as between the litigants, and did not apply as between counsel and client, nor include counsel and attorneys within its prohibitory provisions and penal sanctions. Although our laws may not be susceptible of the same construction that prevailed there for the exemption of counsel, because clearly and expressly applicable, by its terms, as between counsel and client, (and, it might very plausibly be contended, the New York statute expressly embraced and included counsel within its inhibitions,) yet, it imposes a qualified prohibition only, to cease so soon as the *480 suit is finally determined, and, in my viéw, stands far less in the way of a recovery upon a quantum meruit than the New York statute.
If the law then was, that counsel might recover upon a quantum meruit, either where there had been a contract before the determination of the suit, for a sum ^exceeding the legal fee, .or no contract at all — has not the judge substantially so instructed the jury, and nothing more? The action was general in-debitatus assumpsit, in which it was lawful to give in evidence under one of the counts the executed contract for services in support of the bill of particulars, and upon the quantum meruit or insimul computassent counts, evidence to prove the value of the services, irrespective of the contract, or the fact of accounting together for those services after the suit was ended. The plaintiff, as the bill of exceptions informs us, had introduced evidence of the contract, and, for aught that appears or we can infer to the contrary, maj' have introduced ample evidence to sustain the recovery upon the quantum meruit or insimul computassent counts. The statute had not been pleaded, but it may be (though it is by no means clear, for the reasons stated to the contrary, in Judge Tyler’s opinion) that as the action was assumpsit, the defence of the statute might be relied on under the general issue. The judge had been asked to declare the contract void in toto, and that the jury must find for the defendant, doubtless principally, if not exclusively, upon the alleged ground, that the contract was champertous or savored of champerty. These instructions he rightly refused, whether predicated upon the ground of champerty, or of the statute prescribing and limiting the fees of counsel; because the contract was not void, but as a contract could only sustain a recovery to the amount of the lawful fees.
He then proceeded to instruct the jury, “that such a contract as is mentioned in either oí the instructions, would be lawful, if, in their opinion, the compensation was not unreasonable in amount;” in other words, if the services were worth so much; thus measuring the recovery by the value of the services. I admit the judge did not employ the most accurate and felicitous terms, in which to submit to the jury the question of quantum meruit, irrespective of contract, but it really seems to me, we may judicially hold, that that was the sum and ^substance of the instruction, and that the defendant could not be prejudiced by it, if my construction of the law is the proper one, that the plaintiffs had a clear and unquestionable right to recover upon the quantum meruit or insimul computassent counts, if not upon the contract. Had the instruction merely affirmed the legality of the contract, without the superadded qualification or condition, limiting the recovery to the value of the services, (provided the contract, either supposed in the instructions or proved, was upon its face, and by its terms, in violation of the statute,) there would have been error as the law then stood; because the plaintiffs would then have recovered by force, and in virtue of the contract alone, irrespective of the consideration or value of the services. But the qualification divests it of that objection, by shewing that the judge did not mean to affirm its legality and binding force, irrespective of the value of the services, so as to entitle the plaintiffs to recover the sum claimed by the contract, whether the services were worth so much or not; but only to affirm their right to recover to the extent of the fair and reasonable value of those services — in other words, to recover as upon a quantum mer-uit. I should, therefore, be for sustaining the instruction as substantially right, even if applied to a case coming within the prohibition of the statute; but when applied to the case under consideration, where the contract proved included services not provided for in the statute, as well as services embraced, and for which specified services only the legal fee was demanded or charged in the bill of particulars, the construction is altogether unexceptionable in form, as well as substance. I am, therefore, for affirming the judgment.
Judgment affirmed by an equal division of the court.