## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

NICKELS v. KANE'S ADM'R.

JULY 15th, 1886.

1. CHAMPERTY—*Definition—Effect—Case at bar.*—Champerty is a bargain with plaintiff or defendant for a portion of the matter sued for, in case of a successful termination of the suit, which the champertor undertakes to carry on at his own expense. Its effect is to avoid the contract. N. agrees with K., an attorney, as follows: "I agree to pay to K. ten per cent. on the amount that he may succeed in getting the decree reduced, which has been rendered by the circuit court of S. county in favor of W. H. N. against me."
HELD:
   Such agreement is not champertous.
2. IDEM—*Case at bar.*—On appeal, this court reduced the decree $2,890.80, principal, and $614.29, interest, and remanded the cause for the trial by a jury of an issue pertaining to the residue. Before the trial K. died, and N. compromised the suit by paying $2,500. In an attachment in equity by K.'s administrator against N. to recover ten per cent. on the amount of the decree less the $2,500—
HELD:
   Plaintiff can recover only ten per cent. and its interest on the amount by which this court reduced the decree.
3. CHANCERY PRACTICE—*Commissioner's report—Exceptions—Appellate court.*—Where exceptions are necessary, they should specify the defect in the report, and it is too late to object in the appellate court. *Simmons* v. *Simmons*, 33 Gratt. 457.

Appeal from decree of circuit court of Scott county, entered 21st August, 1884, in the cause of James L. Shoemaker, administrator of H. S. Kane, deceased, against W. H. Nickels, seeking to enforce by foreign attachment the collection of a con-

ditional fee, which is set up in the bill. The circuit court decreed that complainant recover of defendant the sum of $2,178.18, with interest from the date of the decree till paid, and costs. From this decree defendant appealed.

Opinion states the case.

*H. S. K. Morrison,* for the appellant.

*R. A. Ayers,* for the appellee.

LACY, J., delivered the opinion of the court.

The suit is a foreign attachment in equity, brought by the administrator of Henry S. Kane, deceased, against the appellant, Wm. H. Nickels, who is a non-resident, under the 11th sec. of chap. 148, Va. Code. There were certain debts, evidenced by the bond of the defendant, which were not controverted. The controversy has arisen, and the contest in this court is over and concerning the following agreement, marked Exhibit "C.:"

We promise to pay Henry S. Kane ten per cent. on the amount that he may succeed in getting the decree reduced, which has been rendered by the circuit court of Scott county, in favor of Walter H. Nickels against the undersigned, William Nickels. As witness our hands and seals, this 31st day of August, 1859.

WILLIAM NICKELS.   [SEAL.]
WM. H. NICKELS.      [SEAL.]

Henry S. Kane was a lawyer, and a decree had been rendered against the said William Nickels in favor of Walter H. Nickels, on the 25th day of May, 1859, for $6,896.03, and $1,496.47 of interest, aggregating $8,365.50.

An appeal was thereupon obtained to this court; and the case was decided on the 21st day of October, 1867, when this court struck out of the account all the claims against the said Wm. Nickels, prior 'to May, 1852, when Walter H. Nickels moved from Pattonsville to Estillville, and remanded the case for the trial of an issue framed in this court, and directed to be tried in the said circuit court by a jury.

The amount of the reduction by this court, comprising all the said items of the claim prior to May, 1852, amounted to $2,890.80 of principal, and $614.29 of interest, as set forth in statement A 3 of Commissioner Morrison's report in this cause. We have not seen the original record of the case on the first appeal, and this amount is not stated in the decree of this court of October 21st, 1867, except in the general terms stated above. But the statement of the commissioner, A 3, is not excepted to, nor denied as to its accuracy as to this amount.

The commissioner in this cause made alternate statements as to this claim by statement A 3, allowing ten per centum on the amount of the reduction stated above, with interest on the principal up to March, 1884, from October 21st, 1859, ascertaining the amount due to be $1,201.36.

By statement A 2 the commissioner adopted a different statement, which was as follows:

"When the case went back the issue was not tried, and H. S. Kane died. After the death of Kane, the lawyer, and before the trial of the issue in the circuit court, the parties compromised the case, Wm. Nickels agreeing to pay an agreed amount of $2,500."

In statement A 2 Commissioner Morrison took the original recovery of $6,896.03, and $8,643.60 interest, and deducted the $2,500 paid by Nickels from the $8,043 of interest, and found the $6,896.03 of principal and $6,143.60, the residue of the interest, making $13,039.63 as the amount of the reduction

obtained by H. S. Kane by the appeal to this court and its decree of October 21st, 1867, and gave ten per centum on that amount, adding, as in statement A 3, the amount due under the bonds of $124.33 and $92.12 of interest, and showed a balance of $2,178.18 as the amount due under the agreement stated above as Exhibit C.

The appellant excepted, and the court overruling the plaintiff's exception to statement A 2 and A 1, and sustaining the exception which was filed by the appellee to statement A 3, gave a decree for the amount found due by statement A 2.

From this decree an appeal was obtained to this court. The first assignment here is that the contract contained in Exhibit C was champertous, being a contract for a part of the recovery.

Champerty may be defined to be a bargain with the plaintiff or defendant in a suit for a portion of the land or other matter sued for in case of a successful termination of the suit, *which the champertor undertakes to carry on* at his own expense; and champerty avoids the contracts into which it enters.

Champerty with us must be considered upon the principles of the common law, there being no statute in our code of laws defining it. By the act of December 8, 1792, the legislature defining it enacted thus: "Champertors be they that move pleas and suits, and cause them to be moved by their own procurement, or by others, and sue them at their own proper costs and charges, to have a part of the land in variance or part of the gain." Code 1819, p. 558. But this act, as will be seen, was merely declaratory of the common law, as we have defined it above. It was, however, repealed by the code of 1849, and the common law was revived as to that matter, even if the statute had repealed it; for if the common law be repealed by a statute, which is itself afterwards repealed, the common law

is thereby revived. *Insurance Co. of the Valley* v. *Bailey's Adm'r*, 16 Gratt. 384; *Booth's Case*, 16 Gratt. 529; *Moseley* v. *Brown*, 76 Va. 424; opinion of Burks, Judge.

But the contract in question is not liable to that objection in any aspect. It is a contract between an attorney and his client, in the regular course of the practice of his profession, for a part of the recovery as a compensation for his services.

In the case of *Evans* v. *Bell*, 6 Dana, 479, it was held that a contract by a client to pay his attorney a sum equal to one-tenth of the amount recovered, was not void for champerty. *Sprye* v. *Porter*, 7 E. & B. 58; 26 L. I., Q. B. 64.

If the attorney should agree to pay the expenses of the suit and the costs of the litigation, it would be otherwise, though in New York, it has been held that this would not come within the inhibition of the law. *Fogerty* v. *Jordon*, 2 Rob. 319; See also the case of *Major* v. *Gibson*, 1 Patton & Heath, 48. In this case, which was decided in 1855, the contract, which was in dispute and the subject of the controversy, was a contract made by attorneys with their client in 1834, before the act of 1840, *supra*, that they should have ten per cent. on whatever might be recovered in a certain chancery suit commenced by them in the year 1834, for their services in the prosecution of it; and if nothing should be recovered in it, then no compensation for their said services in attending before the commissioners to take accounts, or in court, or in taking depositions in the same. It was held that such a contract is not champertous, or of immoral tendency. The court saying of this contract as to its savoring of maintenance and champerty, it will be only necessary to define maintenance and champerty, and refer to the contract set out in the bill of exceptions, in order to show that there is not a feature in this contract that bears the slightest resemblance to champerty or maintenance;

citing Lord Abinger as saying in *Tindall* v. *Parker*, 11 M.
and W., 695, that "the law of maintenance, as I under-
stand it, upon the modern construction, is confined to cases
where a man improperly, and for the purpose of stirring up liti-
gation and strife encourages others either to bring actions or to
make defenses 'which they have no right to make;' and cham-
perty is defined to be an agreement to *share in the fruits of
maintenance.* 7 Bingham, 369, per Tindall, C. J.; 15 Vesey,
Jr., 139, 'and contracts arising out of the bringing or conduct-
ing such actions are illegal and void.'"

The contract between a client and his attorney for a part of
the recovery, as the compensation of the attorney, is not pro-
hibited, and is a species of contract sanctioned in this State by
very general use in the profession; and the principle does not
seem to be difficult when the compensation is for a per centum
of the amount of the reduction obtained, upon the plaintiff's
demand. But while this contract will be enforced by the
court, it must be so enforced only according to its terms. It
should not be extended beyond them, for that is enforcing a
contract the parties have not made. The agreement in this
case was for ten per centum of the amount the lawyer should
get the decree of the circuit court reduced. The lawyer took
the case to this court by an appeal, and the amount of the
reduction was $2,890.80, which, with interest from May 25,
1859 (the date of the circuit court decree), makes the amount
reduced up to March, 1884, $984.91, to which the amount due
under the bond sued on being added, aggregates the amount
of $1,201.36, as ascertained by Commissioner Morrison in
statement A 3, and is the true measure of recovery in this
case, under the contracts of the parties. After the case came
back from this court with the reduction obtained here, the
residue, much the largest part of the demand, was still
demanded, and the question as to that amount was yet

dependent upon the trial of the issue ordered. This was uncertain; at this juncture the lawyer heretofore relied on died, and was not able to render further service, or to produce further reduction.

Other resources have now to be looked to, entirely independent of him and of any contract with him, and the parties settled the suit by a compromise, the defendant paying $2,500, and the plaintiff accepting that amount, the suit was dismissed. There is no just way that the defendant could be made to pay anything for services to a lawyer who is dead. At the time of his death the amount of the reduction in this court had been fixed, and that is the true measure of his recovery under his contract. His estate has no valid claim for services rendered by others after his death, or for results achieved after that time by the defendant himself.

I think the circuit court erred in sustaining the exception of the plaintiff to statement A 3, and overruling the objection of the defendant to statement A 2. Statement A 1 is as to the amount due under the bonds, and there is no exception to that statement in the court below, except in general terms, which do not point any defect or objection to it, and it is too late to object to it here. 2d Rob. Prac. (old ed.) 383; *Peters* v. *Neville's Trustee,* 26 Gratt. 349; *Cole's Committee* v. *Cole's Adm'r,* 28 Gratt. 365, 370; *Simmons* v. *Simmons,* 76 Va. 456.

The decree of the circuit court will be here corrected, wherein it has been stated to be erroneous, and otherwise affirmed, and a decree entered here accordingly.

REVERSED IN PART AND AFFIRMED IN PART.