### Wytheville.

### SEWARD V. CAMP MANUFACTURING COMPANY.

#### June 8, 1911.

Absent, Harrison and Whittle, JJ.

1. CHAMPERTY—*Facts Constituting—Defense in Ejectment.*—Where land is conveyed by a grantor out of possession to a purchaser, by a deed absolute on its face, for a nominal consideration, and it is further agreed between the parties, as a part of the consideration that the purchaser, if he so elects, may sue the party setting up an adverse title, to recover the possession thereof, and if he recovers that he will pay an additional consideration to the grantor on the basis of so much per acre for the land recovered, the contract is champertous, and, in an action of ejectment by such purchaser against the adverse claimant, the champerty may be set up under the plea of not guilty, and if shown will defeat the action. Although there was no express contract binding the grantee to bring suit to recover the land, in no other way could he realize the fruits of his contract; and as the suit to recover the land has its origin and progress in the champertous agreement, the court will not lend its aid to its consummation.

2. CHAMPERTY—*Division in Kind of Recovery.*—In order to establish champerty it is not necessary that it should appear on the face of the contract, nor that the agreement should be for a division in kind of the property sued for. It is sufficient if the champertor and the party with whom he contracted were to share in the fruits of the recovery.

Error to a judgment of the Circuit Court of Brunswick county in an action of ejectment. Judgment for the plaintiff for a part of the land claimed. He assigns error as to residue.

*Reversed in part.*

The opinion states the case.

*E. R. F. Wells,* for the plaintiff in error.

*E. R. Turnbull, Jr.,* and *E. P. Buford,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Miles B. Branch died in 1861, leaving a widow, five sons and four daughters. In 1857 he made a will, which was admitted to probate shortly after his death, in which he bequeathed and devised to his wife, Elizabeth Branch, one-third of his estate during life, and subject to this disposition in her favor he gave to his four daughters—Ann (who married George W. Green), Rosa M. Branch, Susan E. Branch and Mary E. Branch—all of his lands. The disposition of his personal estate is not material to this case.

The land which passed under this will contained 787¾ acres, of which 266¾ were set apart to his widow, but this dower tract is not involved in this litigation.

Under the will of Miles B. Branch his executor was given no power over the real estate, and had no authority to sell or dispose of it in any way, but by deed dated January 23, 1864, the executor did attempt to convey to William J. Branch, a son of Miles B. Branch, the testator, all right and title to 521 acres which remained after setting apart the dower to the widow. This deed was admitted to record in the clerk's office of the County Court of Brunswick on February 6, 1864. By deed dated October 24, 1878, William J. Branch conveyed this tract along with other parcels of land to which he had title to William J. Leake and Alexander Donnan, trustees, for various purposes set forth in the deed. By deed of April 26, 1879, William J. Branch attempted to convey to Goodwyn Grain fifty acres of the above-mentioned tract, and by a subsequent deed to Sallie Penn another parcel of the said tract; and by deed of December 1, 1880, William J. Branch attempted to convey to

Oscar Lewis seventy acres of the above-mentioned tract. These three last-mentioned deeds conveyed about 150 acres of the 521-acre tract, which had been devised to the four daughters of Miles B. Branch, leaving 371 acres undisposed of, except so far as affected by the deed of trust to Leake and Donnan already referred to. Grain, Penn and Lewis entered into possession of their respective portions and remained in adverse possession thereof thereafter, and have acquired valid title thereto by adverse possession. These three parcels of land are not involved in this litigation, which pertains solely to the residue of 371 acres.

By deed of August 26, 1882, Leake and Donnan, trustees, conveyed the 371-acre tract, along with other parcels of land, to Abel H. Bishop, administrator of Carter R. Bishop, deceased, which deed was admitted to record in the clerk's office of the County Court of Brunswick county on June 25, 1883. Some time thereafter a chancery suit was instituted in the Hustings Court of the city of Petersburg, Va., for the settlement and partition of Bishop's estate, and in that suit R. B. Davis and Bernard Mann were appointed special commissioners to make sale of certain real estate owned by Bishop, including this tract of 371 acres in Brunswick county. On July 24, 1899, acting under a decree of that court, the special commissioners sold this tract of land at public auction to E. G. Temple, and by deed dated August 4, 1899, conveyed it to him, the deed being admitted to record August 18, 1899. Thereafter Temple conveyed this tract to the Brunswick Lumber Company, and by deed dated November 1, 1902, the Brunswick Lumber Company conveyed it to the Camp Manufacturing Company.

None of the parties who claim under William J. Branch have ever entered into possession of this 371-acre tract, and it has never been enclosed, cleared or cultivated, but is covered with a dense growth of standing timber, and ever since the death of Miles B. Branch has been in a state of

nature, and at this date is in the same condition as it was at the time of his death. William J. Branch was never in possession of the tract. Shortly before the war he left Brunswick county, and has never since resided there.

In this state of affairs, Walter M. Seward, a grandson of Miles B. Branch, deceased, and a son of Susan E. Branch, one of his four daughters, some time during the year 1908 ascertained that the Camp Manufacturing Company made claim to this tract of land. He made inquiry in regard to it, investigated the title and became satisfied that none of the four daughters of Miles B. Branch had ever conveyed away their right or title to this tract of land. He consulted counsel and was advised that the executor of the will of Miles B. Branch, deceased, had no power or authority to sell or convey this real estate, and that his deed attempting to convey the land to William J. Branch was null and void, and passed no title whatever. He took the matter up with his mother, who after the death of her first husband, Robert Merritt Seward, had married a Mr. Dunn, and with the other heirs at law of the daughters of Miles B. Branch, explained to them the situation and told them that in his opinion they still had a valid title. The heirs did not care to enter into litigation, but were willing to convey their interest to Seward, and as the result of his efforts he obtained deeds to 775/896 of the entire tract. The consideration mentioned in each of these deeds was one dollar, cash in hand paid. In the case of his mother, Mrs. Dunn, there was no other consideration paid or promised. Seward was her only child, and for years had been contributing to her support. In the case of his aunt, Mrs. Rae, it appears that Seward, in consideration of her deed, paid her in cash at various times something less than $100, but there was no agreement that he was to pay her any further consideration. She was his aunt, a childless widow, and the record shows that from time to time he had contributed something to her support.

The mother, Mrs. Dunn, and the aunt, Mrs. Rae, are the two surviving daughters of Miles B. Branch, deceased, and they each own an undivided interest of 9/32 of this tract of land.

Rosa M. Branch, another daughter of Miles B. Branch, deceased, died in Tennessee some time during the year 1865, unmarried and intestate. Her undivided fourth interest in this land passed by descent to her eight brothers and sisters, each of whom inherited from her an undivided interest in 1/32 of this tract, and this 1/32 added to the 8/32 which they derived under the will of Miles B. Branch gave to Mrs. Dunn and Mrs. Rae each 9/32.

Ann R. Green, the other daughter of Miles B. Branch, deceased, died some years since, leaving heirs at law, whose names are set forth in the record.

In addition to the deeds which Seward obtained from his mother and his aunt, he also obtained deeds from some of the heirs of Rosa M. Branch and Ann R. Green, and these latter deeds conveyed to him, in the aggregate, an undivided interest of 271/896 of the whole tract. In addition to the consideration of one dollar mentioned in each of these deeds, Seward agreed with these heirs that in the event he decided to institute suit for the recovery of the land, and succeeded in recovering it, he would pay them an additional cash consideration estimated at about $15 an acre for their interests.

The deeds were all absolute and unconditional. Seward could bring suit or not, as he saw fit. His agreement with them was, that if he succeeded in recovering the land he would pay them an additional consideration, which was not a charge on the land itself, but a personal obligation on his part.

Having acquired title to an undivided interest of 775/896 of this land, Seward, in August, 1909, instituted an action of ejectment in the Circuit Court of Brunswick county

against the Camp Manufacturing Company, and at the trial there was a verdict for the plaintiff for the entire interest claimed in fee simple.

Under the plea of not guilty, the defense relied, first, upon adverse possession, and, secondly, and chiefly, upon the claim that the agreements whereby the plaintiff had obtained the deeds from the various heirs were illegal and void on account of champerty. These questions were submitted to the jury under instructions, and the result was, as already stated, a verdict in favor of the plaintiff for the entire interest claimed by him. The defendant moved to set the verdict aside, and the circuit court being of opinion that all of the deeds to the plaintiff, with the exception of that from his mother, Mrs. Dunn, were void on account of champerty, rendered the judgment complained of, which required him to remit all his recovery, as ascertained by the verdict of the jury, except the undivided interest of 9/32 acquired from his mother, or else submit to a new trial. The plaintiff, in accordance with the statute in such cases made and provided, remitted that portion of his recovery, and accepted the judgment of the court for the undivided interest of 9/32 under protest, and then and there protested against and excepted to the judgment of the court, and later on presented his bill of exceptions to the judge, setting forth the evidence, the instructions and the action of the court, which was made a part of the record.

The defendant, the Camp Manufacturing Company, also moved the court to set aside the verdict and grant a new trial, upon the ground that it was contrary to the law and the evidence, which motion of the defendant was impliedly overruled by the court when it entered the judgment now before us.

Seward applied for and obtained a writ of error, and the Camp Manufacturing Company assigns cross-error under Rule VIII of this court, so that the whole subject is before us for review.

Upon the facts before the jury, we agree with the circuit court that the deed from Mrs. Dunn to her son is not void upon the ground of champerty; and, after a careful consideration of the evidence, we are unable to find any satisfactory ground upon which to base a different conclusion with respect to so much of the land sued for as passed under the deed of Mrs. Rae. We are, therefore, of opinion that the court erred in requiring him to remit the 9/32 which the plaintiff in error derived under the deed from his aunt, Mrs. Rae. With respect to the remaining deeds, covering the interests for which suit was brought, we are of opinion that they are champertous.

Plaintiff in error seems to rely upon the proposition, that there was no express and binding contract upon Seward's part to undertake and carry on this litigation at his own risk and cost. It may be conceded that there was no such term expressed in his contract, but it was necessarily implied. It is true that it was optional with him to sue or not to sue, as he saw fit, but the deeds by which he acquired the title could not of themselves secure to him the fruits of his bargain, and a suit was a necessary condition to the realization of any benefit to be enjoyed by him from the contracts.

Nor do we think it necessary to make good the plea of champerty with respect to the purchase of real estate, that the contract shall stipulate for a division in kind of the land to be recovered. It is sufficient if the champertor and the party with whom he contracted were to share in the fruits of the recovery.

In *Nickels* v. *Kane,* 82 Va. 309, it is said that "champerty may be defined to be a bargain with the plaintiff or defendant in a suit for a portion of the land or other matters sued for, in case of a successful termination of the suit, which the champertor undertakes to carry on at his own expense; and champerty avoids the contracts into which it enters."

In *Roller* v. *Murray*, 107 Va. 527, 59 S. E. 421, the law is thus stated: "A contract by an attorney to undertake and carry on litigation at his own risk, or without costs to his client, for a share of the recovery, is contrary to public policy and void. The law of champerty as affecting civil contracts is not obsolete and inoperative in this State, nor is it affected by the repeal by implication of the statute, declaratory of the common law, making champerty a criminal offense."

In Bishop on Contracts, sec. 121, it is said: "If the sealed undertaking is to do a thing unlawful, or against public policy or morals, or if the unexpressed consideration for it is in fact thus tainted, or if it was obtained by fraud or duress, the seal will not serve as a screen for the wrong; but the real nature of the transaction, though it does not appear on the face of the instrument, may be shown, and a party may avail himself of this matter, the same as though there were no seal. And the general doctrine, that we may look into the real consideration of a written contract, already explained, applies as well to sealed contracts as to others. If the law were not so, the seal 'would,' in the words of Lord Ellenborough, 'be made a cover for every species of wickedness and illegality.' "

In *Webb* v. *Armstrong* (Tenn.), 5 Humph. 380, it is said: "If it satisfactorily appear to the court in proof, that the suit, in its origin and progress, is affected by champerty, it is a duty of the court not to permit itself to become the organ and instrument to consummate such agreements, but to repel the plaintiff and his suit."

In *Holloway* v. *Low*, 7 Porter (Ala.) 490, the court said: "The agreement in writing of the plaintiff in error, which is disclosed as the foundation of this action, is impeached as illegal; and it is clearly so, if champerty is an offense known to the laws of this State. As we have no statute defining this offense, we must recur to the common law, to

ascertain what it is and to what cases it extends. It is
defined by Hawkins as the unlawful maintenance of a suit,
in consideration of some bargain to have a part of the thing
in dispute, or some profit out of it, and has been held to
cover all transactions and contracts, whether by counsel
or others, to have the whole or a part of the thing or dam-
ages recovered."

In *Peck* v. *Heurich*, 167 U. S. 624, 42 L. Ed. 302,
17 Sup. Ct. 927, which was an action of ejectment, it
was held that "A deed to trustees to enable one of them,
who is an attorney at law, to conduct litigation for the
title and possession of real estate on his own account and
at his own cost and expense, in consideration of one-third
of the property recovered, is void for champerty. The
joinder of another person as co-trustee in a champertous
deed, made to enable the other trustee to conduct litigation
on his own account and at his own cost and expense, for a
part of land to be recovered or the proceeds thereof, does
not make the deed valid. An action of trustees claiming
under a champertous deed cannot be maintained, although
a similar action might be maintained by the grantors in
their own name."

In the course of the opinion in that case it is said: "He
agreed to pay the costs of the litigation; he agreed to take
as his compensation a part of the land which was the sub-
ject of the suit, or a part of the proceeds of sale of it, which
amounts to the same thing; and his compensation was not
a fixed sum of money, payable out of the proceeds of sale,
but a contingent share of the very thing to be recovered
or of the money that might be received by way of settle-
ment or compromise; and the character of the enterprise on
the part of the attorney was so plainly a speculative one,
that in the deed the net results to him are mentioned as
'profits.' If this be not champerty, we fail to see wherein
there can be champerty. We must regard an agreement

by any attorney to undertake the conduct of litigation on his own account, to pay the costs and expenses thereof, and to receive as his compensation a portion of the proceeds of the recovery, or of the thing in dispute, as obnoxious to the law against champerty; and that this was the character of the agreement in the present case we are entirely satisfied. The very thing in dispute was conveyed, or sought to be conveyed, in advance, to the attorney and an associate, for the express purpose of enabling the attorney to conduct the litigation on his own account and at his own cost and expense; and in consideration of this he was to retain at the end of the litigation one-third of what had been conveyed to him, and was to account to his clients for the other two-thirds. This was certainly an agreement on his part to take as his compensation a part of the thing in dispute, and it does not alter the case at all that the land when recovered was to be sold. That was the only practical mode for a division of the proceeds between the parties to the enterprise."

We think it plain from the evidence that in respect to the interests now under consideration there was a champertous agreement which was the effectual moving consideration for the deeds to those interests, though not expressed upon the face of the deeds, and from the consequences of which plaintiff in error could not have escaped except by a breach of faith.

With respect, then, to the interests derived from Mrs. Rae, we think, as we have already said, that the right of the case is plainly with the plaintiff in error; that with respect to the other interests, the right of the case is plainly with the defendant in error, upon the plea of champerty.

Upon the defense of adversary possession, we are of opinion that the jury was fairly and sufficiently instructed, and that the verdict was in accordance with the evidence.

Upon the whole case, we are of opinion that the judgment

of the circuit court should be reversed, and this court will enter a judgment for the plaintiff in error for 18/32 of the land in controversy in fee simple, that being in our opinion the judgment which the circuit court should have rendered; and that, as to the residue of the land in the declaration mentioned, the defendant go thereof without day, and that the plaintiff in error recover his costs in this behalf expended.

*Reversed in part.*